869 F.2d 594
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ada T. SMITH, Plaintiff-Appellant,
v.
BOWEN, SEC., Department of Health & Human Services,
Defendant-Appellee.
 No. 88-2524.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 1, 1988.
Decided: Feb. 10, 1989.
 
 Robert Lee White, for appellant.
 Haila Naomi Kleinman, Assistant Regional Counsel (Richard K. Willard, Assistant Attorney General; Margaret Person Currin, United States Attorney; Bruce R. Granger, Chief Counsel, Region IV, Mary Ann Sloan, Principal Regional Counsel, Social Security Disability Litigation, David L. Stephens, Assistant Regional Counsel, Department of Health and Human Services, Office of General Counsel on brief), for Appellee.
 Before K.K. HALL and ERVIN, Circuit Judges, and DENNIS R. KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Ada T. Smith ("claimant") appeals from a decision of the district court affirming the Secretary's denial of her claim for social security disability insurance benefits, brought pursuant to 42 U.S.C. Sec. 405(g). We vacate the judgment of the district court and remand the case with instructions to return it to the Secretary for further proceedings.
 
 I.
 
 2
 The claimant filed her application for benefits on December 17, 1982. The application was denied initially and upon reconsideration. The claimant requested a hearing before an administrative law judge ("ALJ"), who found claimant could perform a limited range of sedentary work and thus, was not under a disability as defined in the statute. The Appeals Council subsequently denied review and the decision became final. The claimant then filed an action for judicial review. Her complaint was subsequently dismissed when she elected to have her claim remanded under Hyatt v. Heckler, 757 F.2d 1455 (4th Cir.1985).[1]
 
 
 3
 Pursuant to the remand, a second hearing was held before an ALJ on July 18, 1986. Again, the claimant was found not to be under a disability as defined in the statute. The Appeals Council again denied review and claimant filed the instant action for judicial review.
 
 
 4
 The claimant is 48 years old, has a tenth grade education and last worked as a machine operator for an automobile parts manufacturer and sewing machine operator. Claimant filed her application for disability benefits alleging that she had been disabled since June 14, 1982, as a result of a lower back condition. Because of severe back pain, the claimant underwent a lumbar laminectomy at L4-L5 disc in 1982. Dr. Robert Timmons, who performed the operation, reported that claimant continued to complain of pain after the laminectomy. He estimated her disability in early 1983 at 15% of the back. Claimant was examined by Dr. Edwin Cooper in March, 1983. Dr. Cooper diagnosed a possible herniated cervical disc, post-lumbar laminectomy, limitation of motion in the lower back, and possible chronic right sacroiliac strain. Dr. Cooper recommended further evaluation of claimant's persisting back, leg, and arm pain.
 
 
 5
 In May of 1983, claimant was examined by Dr. Isaac Artis, who also noted her persistent complaints of leg and lower back pain and found her prognosis for returning to any work that required bending, standing, or lifting poor. In 1984, claimant was seen by Dr. Edward Treadwell at the East Carolina University Medical School. Dr. Treadwell, too, noted claimant's complaints of pain. He wrote:
 
 
 6
 It appears that the patient will have chronic low back pain from previous injury. She also has chronic fibrositis, which is causing her a considerable amount of pain. The prognosis of these patients are unknown but they usually have some continued pain. We usually try multiple trials of various therapeutic modalities to try to help them obtain muscle relaxations. However, her case is more complicated in that she has had a definite cause for low back pain in combination with her fibrositis. With the amount of pain she is having, I very much doubt she will be able to perform any activities requiring any heavy lifting or longstanding use of her upper extremities.
 
 
 7
 In November of 1986, Dr. Griffith Steel, a neurologist, examined the claimant. Like the other doctors who had treated the claimant, he noted her complaints of daily pain. Dr. Steel diagnosed fibrositis syndrome and failed low back syndrome and was of the view that claimant's prognosis for improvement was rather poor.
 
 
 8
 In addition to the medical evidence, there is evidence from the claimant, who testified at the initial hearing that was held on May 31, 1983. She testified that she had a constant, dull, aching pain in her back which radiated into both legs and her right arm. Claimant testified that she was unable to bend, lift more than ten pounds, or stand and walk for long periods of time. She wore a back brace and took Darvocet for pain. Although claimant testified that she could do light housework and cooking, she testified that she had to lie down during the day and for this reason could not perform any work.
 
 
 9
 At the same hearing, a vocational expert, Dr. Paul Alston, testified. The ALJ asked two hypothetical questions. The first did not include the element of pain:
 
 
 10
 All right, doctor, assume that I also find from the evidence that the claimant is 43 years of age, has a 10th grade education and can read and write and can perform all the demands of light work, except that she can only lift 10 pounds, and that she would have to have a position in which she could change positions at will.
 
 
 11
 But she would be primarily seated. Are there jobs within the unskilled light occupations which the claimant could perform, taking into account those restrictions on lifting?
 
 
 12
 Dr. Alston testified that under these circumstances, there were jobs in the national economy that claimant could perform. The ALJ asked a second hypothetical question:
 
 
 13
 Doctor, assume that I give full credibility to Mrs. Smith's testimony, that she has constant unremitting pain, that she gets very little relief from medication, that she has to change positions frequently, and that she has to take rest periods during the day. That there are times when she has to lie down, where sitting or standing would not be feasible. That she has trouble with both legs and arms--the right arm. That she can't stand or walk more than 40 minutes.
 
 
 14
 Under that assumption, are there any jobs in the national economy that she could perform?
 
 
 15
 Dr. Alston testified that, under these circumstances, the claimant would not be able to work.
 
 
 16
 On the basis of the evidence adduced at both hearings, the ALJ who conducted the second hearing found that the claimant suffers from severe status post lumbar laminectomy, chronic fibrositis syndrome and right shoulder complaints. He also found that the claimant's physical impairments prevented her from returning to her former employment as a sewing machine operator and machine tender, but that the claimant retained the residual functional capacity to perform sedentary work limited only by her need to sit or stand at will. The ALJ reached this conclusion by finding that the claimant's description of her own limitations due to pain was not entirely credible. Relying on Dr. Alston's response to the first hypothetical question posed, he concluded that the claimant could perform certain sedentary jobs that existed in the national economy, including electronics assembler, coil winder and cashier.
 
 
 17
 Based upon the ALJ's determination, the Secretary denied the claimant's application for benefits. The district court concluded that the Secretary's decision was supported by substantial evidence and granted the Secretary's motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.
 
 II.
 
 18
 On appeal, the claimant contends in part that the ALJ improperly discounted the evidence of pain. We agree. The ALJ recognized, and properly so, that the effect of pain on a claimant's ability to function must be evaluated before benefits can be denied. Myers v. Califano, 611 F.2d 980 (4th Cir.1980). The ALJ in this case found that the claimant does suffer some pain. He found, however, that her complaints of pain were not entirely credible even though he recognized that the claimant suffered from medical conditions that could cause pain. In Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986), this Court held that the Disability Reform Act of 1984 requires medical evidence of a condition that could reasonably produce pain, not objective evidence of the pain itself or its degree. The record in this case clearly shows that the claimant suffers from medical conditions that can cause pain. The ALJ so found.
 
 
 19
 The problem arises from the fact that the ALJ then based his decision to deny benefits on a hypothetical question to a vocational expert that included no mention of pain. Having concluded that the claimant suffered from pain, though the extent of that pain was at issue, the ALJ could not then refuse to include that nonexertional impairment in the question to the vocational expert. When he did so, the expert's testimony was based on an improper factual determination and thus cannot be used to support a finding that there are jobs in the national economy that claimant can perform.
 
 
 20
 We therefore vacate the judgment of the district court and remand this case to it with instructions to remand it to the Secretary for further proceedings. Specifically, we direct the Secretary to take the testimony of a vocational expert in response to a proper hypothetical question that includes an element of pain.
 
 
 21
 VACATED AND REMANDED.
 
 
 
 [1]
 Hyatt v. Heckler was a class action challenging the Secretary's policy of not adjudicating claims in accordance with circuit precedent. This Court held, inter alia, that initial claimants who alleged disability from pain were entitled to have their claims remanded for reconsideration pursuant to the interim pain standard of the Social Security Disability Reform Act of 1984. Claimant was a member of this subclass and accordingly her claim was remanded for further administrative proceedings